```
              UNITED STATES DISTRICT COURT
              EASTERN DISTRICT OF NEW YORK

------------------------------X
                              :
UNITED STATES OF AMERICA,     :
                              :      99-CR-1137 (ERK)
        v.                    :
                              :      May 10, 2002
MARIO PLACENCIA,              :
                              :      Brooklyn, New York
             Defendant.       :
                              :
------------------------------X


        TRANSCRIPT OF CRIMINAL CAUSE FOR SENTENCING
          BEFORE THE HONORABLE EDWARD R. KORMAN
               UNITED STATES DISTRICT JUDGE

APPEARANCES:

For the Government:        LORETTA LYNCH, ESQ.
                           UNITED STATES ATTORNEY
                           BY: NOAH PERLMAN, ESQ.
                           ASSISTANT U.S. ATTORNEY
                           225 Cadman Plaza East
                           Brooklyn, New York  11201



For the Defendant:         THOMAS DUNN, ESQ.




Audio Operator:            CHRISTY CAROSELLA


Court Transcriber:         ARIA TRANSCRIPTIONS
                           c/o Elizabeth Barron
                           31 Terrace Drive, 1st Floor
                           Nyack, New York 10960
                           (215) 767-7700



Proceedings recorded by electronic sound recording,
transcript produced by transcription service
```

```
 1                THE CLERK:  United States versus Mario Placencia.
 2                Please state your appearances for the record.
 3                MR. PERLMAN:  Noah Perlman for the United States.
 4                MR. DUNN:  Thomas Dunn for Mr. Placencia.
 5                THE CLERK:  The interpreter is still under oath.
 6   Please state your name for the record.
 7                THE INTERPRETER:  For the record, Estrellita
 8   Plested, certified Spanish interpreter.
 9                THE CLERK:  The magistrate took the plea in this
10   case, Judge.
11                THE COURT:  Any reason why I should not accept the
12   plea?
13                MR. DUNN:  No, your Honor, at least in my view,
14   but my client advises me today that his recollection of the
15   plea was that before any prospective penalties were
16   discussed, he went to sleep.  It's his position that even
17   though there's a signed plea agreement, he never agreed to a
18   sentence where he was going to get under the statute 240
19   months.
20                THE COURT:  Let's order the transcript of the
21   sentence.
22                MR. PERLMAN:  The transcript of the plea?
23                THE COURT:  The plea, I'm sorry.
24                (Pause in Proceedings)
25                THE COURT:  Look, the sentencing minutes are to my
```

1  mind -- I'm sorry, I don't know why I called them the
2  sentencing minutes.  First of all, he signed the plea
3  agreement, which contained the sentencing estimate.  Number
4  two, the magistrate explained the terms of the plea
5  agreement to him in terms of what the estimated sentence
6  was.  While she didn't, as far as I can see -- because she
7  was taking two pleas at once, she didn't specifically say to
8  him, do you understand that.
9         Later on on page 27, when she talks about the
10 waiver of the right to an appeal, she addresses Mr.
11 Placencia specifically and says, "Mr. Placencia, your
12 agreement contains a similar provision.  You've agreed that
13 as long as the government's estimate of 240 months is not
14 exceeded, that you will not challenge your sentence.  So
15 your lawyer is free to argue to Judge Korman that the
16 government's calculation is wrong, that your total offense
17 level is actually four levels less, 36 rather than 40, and
18 the range would then be below 240 months.  He can argue that
19 but even if that's rejected, as long as your sentence does
20 not exceed twenty years, you can't further challenge your
21 conviction or sentence.  Do you understand that?"
22        Mr. Placencia says, "Yes."  The notion that he was
23 asleep during this is just simply ludicrous.
24        MR. DUNN:  Just for the record, your Honor, I
25 previously, before that plea was entered with you, had gone

```
 1  to MDC and reviewed the plea with him with a Spanish
 2  interpreter.  Subsequently, we reviewed the presentence
 3  report with the Spanish interpreter as well.
 4              THE COURT:  You also indicated that he basically
 5  -- in the plea minutes that he basically speaks fluent
 6  English and he simply needs help with some -- or was that
 7  the other lawyer?
 8              MR. DUNN:  I think that was the other lawyer
 9  because he speaks Spanish.
10              THE COURT:  Okay.
11              MR. DUNN:  Also, he hasn't met with me lately.  I
12  went to see him the other day.
13              THE COURT:  Did I adopt the recommendation?
14              THE CLERK:  Not yet.
15              THE COURT:  I adopt the recommendation of the
16  magistrate that the plea was knowingly and voluntarily
17  entered by the defendant, with a full understanding of his
18  rights and the consequences of the plea and that there is a
19  factual basis for the plea.  I therefore accept the plea of
20  guilty.
21              Just for my own information, what did he get for
22  pleading guilty?
23              MR. PERLMAN:  What did he --
24              THE COURT:  Get.  In other words, what benefit did
25  he get from pleading guilty?
```

```
 1              MR. PERLMAN:  The guideline range was 292 to 365
 2   months.
 3              THE COURT:  I know, but the charge to which he
 4   pled has apparently a statutory maximum.
 5              MR. PERLMAN:  That was the advantage of pleading.
 6   In other words, the agreement, the benefit to the defendant
 7   was allowing him to plead to this charge.
 8              THE COURT:  Oh, to this particular count.
 9              MR. PERLMAN:  Yes.
10              THE COURT:  In other words, there were other
11   counts in the indictment that carried higher sentences.
12              MR. PERLMAN:  Correct, which would have sentences
13   within the guideline range he faces.
14              THE COURT:  I understand.
15              MR. DUNN:  Including a 924(c) count.
16              THE COURT:  Okay.
17              MR. DUNN:  I'm ready to go forward today, your
18   Honor.  I've reviewed the presentence report with my client
19   in the past.  I've written a letter to the Court.  Although
20   he understood the leadership issues at the time of the plea,
21   he's challenging that and he wishes to submit in support of
22   that an affidavit of Mr. Lopez, the lead defendant in the
23   case, Lucencia (ph) Placencia, which basically states that
24   Lucencia Placencia swears that he's under full faculty, with
25   no pressure to me, nor bribery.
```

1            "I solemnly do declare that at no moment Mario
2   Placencia was my partner, nor my right-hand man.  I was the
3   only leader of the Lopez organization.  Mr. Mario Placencia
4   was just another employee, the same as other workers in the
5   Lopez organization."  I've shown that to Mr. Perlman.  He
6   was challenging the four-point increase for leadership role,
7   which would have brought him down, if it was granted.  Since
8   his level was I think 41 points in the presentence report,
9   it would have brought him to 210 to 262, I believe.
10            Is that right?
11            MR. PERLMAN:  That's correct.
12            MR. DUNN:  That would be in a range below the 240
13  months of the statute.  The government in their letter
14  obviously opposes that.
15            THE COURT:  What is the proof about his role?
16            MR. PERLMAN:  Your Honor, the proof would come
17  from a number of cooperating witnesses, from the agents --
18            THE COURT:  What would they say?
19            MR. PERLMAN:  They would say that the organization
20  was run by Lopez and that this defendant, Mr. Placencia,
21  served as his right-hand man, in that he was responsible for
22  enforcing discipline and a number of other supervisory,
23  organizational roles.  He would collect the money, ensuring
24  that the proper crack -- in other words, that the crack was
25  at each location where it should have been, general

1  organizational materials.
2          Your Honor, even were your Honor to discount his
3  role as organizer or leader and even took a point or even
4  two points off to a manager or supervisor, his guideline
5  range would still be, depending on how many points you
6  adjusted the guidelines, above 240 months, or if you were to
7  remove the role completely in a guideline range that
8  encompassed the 240 months.
9          THE COURT:  Let me hear from the defendant.  Do
10 you wish to speak?
11         MR. DUNN:  Your Honor, if I could just address one
12 more thing.
13         THE COURT:  Yes.
14         MR. DUNN:  I had also made two applications for a
15 downward departure.  Did you want to address that first?
16         THE COURT:  Yeah, let's address that first because
17 I don't have to deal with this if it's not going to make any
18 difference in my sentence.
19         MR. DUNN:  Sure.
20         THE COURT:  That's why I wanted to move on.
21         MR. DUNN:  One was extraordinary family
22 circumstances, which the government opposes, and I
23 understand that it's something that's rarely given.  He was
24 living with a woman who was later arrested with him, a
25 codefendant in the case and had a child while he was

```
 1  incarcerated.
 2           He had also been supporting his family, his mother
 3  and some siblings while he was out on the street.  As a
 4  result of his incarceration, it's clearly impacted on his
 5  young child.  He had even refused to see the child for a
 6  period of time, so it's clearly impacting on the child and
 7  on the mother of the child. So I'd ask that the Court
 8  downwardly depart based on extraordinary family
 9  circumstances.
10           Also, as reflected in the presentence report, Mr.
11  Placencia, before his involvement in this case, was riding a
12  motorcycle and was seriously injured and spent two weeks in
13  the hospital, a period of time where he was basically
14  unconscious or in a coma.  Then he eventually came out of
15  it.  It's his position that that impacted on his becoming
16  involved in this case.
17           Clearly I'm aware that the guideline for
18  diminished capacity states that this application cannot be
19  made when there is violence in the case and Mr. Placencia
20  was charged with 924(c) and also, as part of the plea
21  agreement, there was a two-point increase for use of a
22  weapon.  So it would seem that that's not applicable, that
23  he can do that.
24           So what I argue to the Court in the alternative,
25  and I'm not sure if I'm steady ground on this, is that as a
```

1   combination of factors with the extraordinary family
2   circumstances, taking into account this head injury that he
3   received and how it impacted possibly on his involvement in
4   this case, I would ask for a downward departure.
5           THE COURT:  Do you wish to speak, Mr. Placencia?
6           THE DEFENDANT:  Just that my father died, my
7   brother died, too.  I don't know how I'm going to be able to
8   receive this kind of sentence.
9           THE COURT:  Well, you pled guilty.  They told you
10  about this sentence.  Essentially, you've gotten -- if you
11  had gone to trial and had been convicted, you would have
12  faced a much more severe sentence.  In other words, you've
13  gotten a substantial benefit from pleading guilty and that's
14  presumably why you pled guilty, because the risk of being
15  convicted was great and if you were convicted, the sentence
16  would be much more severe.
17          What would the guidelines have been if he had been
18  convicted?
19          MR. PERLMAN:  The guidelines would have been 44,
20  which is a life sentence.
21          THE COURT:  You would have been facing a potential
22  life sentence here if you hadn't pled guilty and had gone to
23  trial and been convicted.  One of the problems here is that
24  the crack guidelines are very high and there are large
25  quantities involved.  In effect, they've been brought down

1  significantly by your plea of guilty to a charge that
2  carries a maximum sentence of 240 months.
3              It's a long time, I know, but you would have been
4  much worse off if you had gone to trial and been convicted.
5  There is a chance you could be acquitted but I'm not in a
6  position to evaluate that.  I assume you and your lawyer
7  evaluated the chances of an acquittal here and the
8  likelihood of a potential life sentence if you were
9  convicted.
10             It doesn't matter to me whether or not we adjust
11 the guidelines down by four levels because I would give the
12 same sentence.  That is, if we reduced it by four levels, it
13 would be 210 to 262 and I'd essentially pick the midpoint
14 between the two.  I don't know if it's exactly the midpoint
15 but that's the substance of it.
16             I'm sentence the defendant to the custody of the
17 Attorney General for a period of 240 months, with a period
18 of supervised release, with a condition that he participate
19 in such substance abuse treatment as directed by the
20 Probation Department.  The treatment may include outpatient
21 or residential treatment, as determined by the Probation
22 Department.
23             The defendant shall abstain from all illegal
24 substances and/or alcohol.  He shall participate in mental
25 health treatment as directed by the Probation Department.

```
 1  With regard to both programs, the defendant shall contribute
 2  to the costs of services rendered or psychotropic
 3  medications provided by a copayment or full payment, in an
 4  amount to be determined by the Probation Department, based
 5  on the defendant's ability to pay and/or the availability of
 6  third-party payment.  I impose a $100 special assessment and
 7  also another condition of probation is if the defendant is
 8  deported upon the completion of his sentence, that he not
 9  return to the United States illegally.
10              You should know you get credit for time served.
11  You're already done two and a half years and there's another
12  15% off for good behavior.  15% of twenty years is three
13  years.  So with time off for good behavior, it's really a
14  seventeen-year sentence, not twenty, and you've already done
15  two and a half.  So what you're looking at is about fourteen
16  and a half years.  If you look at that and understand that
17  you could have had a life sentence if you had gone to trial
18  and were convicted, you'll see that although it's a lot of
19  time, it's the best of a bad situation.
20              THE CLERK:  Judge, supervision?  You didn't give a
21  number.
22              THE COURT:  Oh, sorry.  The term of supervision is
23  three years.
24              MR. PERLMAN:  The government moves to dismiss open
25  counts.
```

```
 1                THE COURT:  The open counts are dismissed.
 2                THE CLERK:  The defendant has waived his right to
 3   appeal.
 4                MR. PERLMAN:  Yes.
 5                MR. DUNN:  Your Honor, even though my client has
 6   waived his right to appeal, he may want to file notice of
 7   appeal anyway.  I would just ask, based on his financial
 8   condition, if he can be determined indigent so that he
 9   doesn't have to pay for a docket number.
10                THE COURT:  Yes.  Why don't you just go ahead and
11   file a notice of appeal for him and let it be dealt with by
12   the Court of Appeals.
13                MR. DUNN:  Fine, your Honor.
14                THE COURT:  So you'll file it?
15                MR. DUNN:  I'm going to file.
16                THE COURT:  Okay.
17                MR. DUNN:  Thank you, Judge.
18                         * * * * * * * *
19
20
21
22
23
24
25
```

```
 1
 2
 3
 4
 5
 6
 7
 8
 9
10
11
12
13
14
15
16
17
18     I certify that the foregoing is a correct transcript
19   from the electronic sound recording of the proceedings in
20   the above-entitled matter.
21
22
23   [signature]
24
25   ELIZABETH BARRON                          June 11, 2009
```